[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On January 3, 1995, the parties entered into a leasing agreement, in writing, whereby the plaintiff leased from the defendant a piece of construction equipment commonly referred to as a wheel loader. On June 27, 1996, the parties amended the lease. Thereafter the defendant repossessed the equipment and this action ensued.
The plaintiff filed a six count complaint for breach of contract, a CUTPA claim, intentional, wanton or reckless conduct, unjust enrichment, conversion and negligence. The defendant filed a motion to strike counts II through VI. The court (Leheny, J.) granted the motion as to the third count (intentional, wanton or reckless conduct) only. On, April 5, 1999, the plaintiff filed a request to amend the complaint by adding a seventh count essentially claiming that the defendant failed to notify the plaintiff that it was selling the repossessed wheel loader and that the resale was not done in a commercially reasonable manner. The defendant objected to the request. The court did not act on the plaintiff's request to amend.
A trial was held on June 9, 1999, and June 10, 1999, at which time the court heard the testimony of the parties and their witnesses and accepted into evidence several exhibits.
At the conclusion of the plaintiff's case in chief the defendant made an oral motion to dismiss the plaintiff's claims.
The court granted the motion to dismiss as to the unjust enrichment, conversion and negligence counts.
The court makes the following findings of fact. On January 3, 1995, the plaintiff leased from the defendant a 1980 used Caterpillar Wheel Loader (plaintiff's Ex. A). The Equipment leased provided, inter alia, that the plaintiff (lessee) was required to maintain the property and to insure the same. The parties acknowledged that the agreement was a commercial transaction. The lease also contained a 10 day default provision and repossession was a remedy available to the defendant.
Following a period of financial difficulty the plaintiff made certain representations to the defendant (plaintiff's Ex. K) if CT Page 12484 the defendant would amend the lease. On June 27, 1996, the parties amended the term and payment provisions (plaintiff's Ex. 0). On August 16, 1996, without the knowledge of the plaintiff, the defendant repossessed the equipment from a job site where the plaintiff had been working. Relevant to this case is a prior repossession of a payloader which the defendant leased to the plaintiff.
Paula Amazeen, Vice President of Operations for the defendant, testified as follows. On August 2, 1996, she was advised by way of a phone conversation with the George J. Smith agency that the plaintiff's insurance had been cancelled. Confirmation followed via fax on September 12, 1996, (plaintiff's Ex. T). Between August 4, 1996, and August 8, 1996, her staff tried by phone to contact the plaintiff without success. She decided on August 8, 1996, to repossess the equipment which took place on August 16, 1996. The court notes that plaintiff's Ex. T includes the following language "and was not rewritten through our agency." Further, the lease was amended on June 27, 1996, whereas the insurance was "cancelled back on 12/4/95 for non-payment of premium". The witness further testified that the onlybasis for the repossession was the plaintiff's failure to insure the equipment in question.
Richard Ciralli, Asset Recovery Manager for the defendant, testified as follows. He was familiar with the transaction and on September 9, 1996, he and another employee of the defendant had a telephone conversation with the plaintiff the substance of which was memorialized (plaintiff's Ex. R). In this conversation Mr. Ciralli told the plaintiff the equipment was repossessed because of a large deficiency when the payloader was repossessed and the receipt of information of improper care of the equipment and its relocation.
Since Ms. Amazeen had no way of knowing that the equipment was not insured the court finds that Mr. Carelli's testimony was more credible.
The issues presented by this case are as follows:
1. Did the defendant breach its agreement with the plaintiff as alleged in Count 1;
2. Did the actions of the defendant give rise to a CUTPA claim as alleged in the Count 2; and CT Page 12485
3. Did the defendant violate the provisions of the Uniform Commercial Code as alleged in Count 7.
The court finds in favor of the plaintiff as to Count 1 only. The testimony of the plaintiff as to damages was difficult to follow and often speculative. However, the court finds that the job the plaintiff was working on at the time of the repossession "lends itself to a specific damage award. The plaintiff was in the process of completing a purchase order for J.F. Barrett Sons, Inc. (plaintiff's Ex. 00). The contract called for 5,000 cubic yards of shot rock @ $6.50 per cubic yard. He delivered 600 cubic yards before the equipment was repossessed and further performance terminated. Had the plaintiff completed this particular job he would have received an additional $28,600 (4,400 cubic yards @ $6.50/cubic yard). The plaintiff's cost of material was $1.50 per cubic yard. The plaintiff has proven damages in the amount of $22,000 and judgment may enter accordingly.
JOHN R. CARUSO, J.